UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERLATO WINE GROUP, LTD.,<br><br>   Plaintiff,<br><br>   v.<br><br>FEDERAL INSURANCE COMPANY,<br><br>   Defendant. | Case No. 22-cv-04075-JSC<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Terlato Wine Group brings this suit against Federal Insurance Company for breach of contract. (Dkt. No. 1.)[1] Defendant moves to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). After carefully reviewing the briefing, the Court concludes that oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the December 1, 2022 hearing, and DENIES Defendant's motion to dismiss. The Court has subject matter jurisdiction over the dispute and Plaintiff states a claim for breach of contract.

## BACKGROUND

### I.     Complaint Allegations

Terlato Wine Group owns the Rutherford Hill and Chimney Rock wineries in Napa County, California. (Dkt. No. 1 ¶ 2.) Federal Insurance Company is an insurer, incorporated in New Jersey and headquartered in Connecticut. (*Id.* ¶ 11.)

####      A.     The Policy

Federal Insurance Company issued an insurance policy to Terlato in exchange for a "significant premium." (Dkt. No. 1 ¶ 1.) The policy—known as a "Wineries Insurance Program"—included the Rutherford Hill and Chimney Rock wineries and covered "direct physical

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

loss or damage" to "building[s]" and/or "personal property, caused by or resulting from a peril not otherwise excluded." (*Id.* ¶¶ 19, 20.) Both "fire" and "smoke" are "perils" expressly covered under the policy. (*Id.* ¶ 21.)

The policy also covers "business income loss [incurred] due to the actual impairment of [operations]; and extra expense [incurred] due to the actual or potential impairment of [operations]" as a result of property damage resulting from a covered peril, (*id.* ¶ 23), and direct physical loss or damage to "trellis or grape vines" due to specified perils, (id. ¶ 22.) The phrase "trellis or grape vines" is defined to mean "growing grapes, grape vines, grape vine supports, or irrigation piping used to service the grape vines." (*Id.* ¶ 24.) "Wine in Process" is defined as "grapes that are harvested; being prepared for fermentation; or in any state of fermentation. 'Wine in Process' does not mean wine which is in its completed state and ready for sale." (*Id.* ¶ 25.)

Damage to trellis or grape vines is subject to a coverage limit per occurrence. (*Id.* ¶ 26.) An "occurrence" is defined to mean, "for all other perils [other than earthquake, volcanic eruption, or windstorm]: 1. one event; or 2. a series of causally related events that: a. contribute concurrently to; or b. contribute in any sequence to, the loss or damage." (*Id.* ¶ 27.)

**B.     The Fires**

Over the course of approximately 40 days in 2020, two fires affected Terlato's Napa County wineries. On or around August 17, 2020 the LNU Complex Fire began and damaged Terlato's insured property. (*Id.* ¶ 28.) And on or around September 27, 2020, the Glass Fire began and damaged Terlato's insured property. (*Id.* ¶ 29.) Terlato alleges the two fires were unrelated and that both fires damaged Chimney Rock and Rutherford Hill's "trellis or grape vines" and "wine in process." (*Id.* ¶¶ 30, 31.) Specifically, Terlato alleges "smoke taint" harmed both "grape vines" and "wines in process." (*Id.* ¶¶ 31, 32.) "[S]moke taint occurs when volatile phenols released through fermentation cause undesirable flavors and smells resulting in wine that tastes or smells smoky, burnt, ashy or medicinal. Smoke taint can occur when wine is made using wine grapes exposed to smoke before, during, or after harvest." (*Id.* ¶ 4.)

**C.     Coverage Disputes**

Terlato "provided [Defendant] notice of its claim arising from the LNU and Glass fires."

(Id. ¶ 34.) Federal paid for some lost or discarded grapes, "but only for damage from the LNU Fire, not for damage from the Glass Fire." (*Id.* ¶ 32.) Instead, Terlato alleges Defendant "denied coverage with respect to Terlato's claims concerning smoke taint damage to wine and "Wine in Process." (*Id.* ¶ 35.) Defendant "has taken the position that smoke taint damage to grapes and 'Wine in Process' is only covered under its 'Trellis or Grape Vines' coverage, and only as one 'Occurrence' as defined in the Policy." And Defendant declined to pay "the full amount of Terlato's covered Business Income and Incurred Expense Loss." (*Id.* ¶ 37.)

## II. Procedural Background

Plaintiff filed this action in July 2022. (Dkt. No. 1.) Plaintiff alleges Defendant breached its obligations to provide coverage under the policy and that Plaintiff suffered monetary damages as a result. (*Id.* ¶¶ 38-41). Defendant moves to dismiss the action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), Federal argues Plaintiff's claim is not yet ripe because Federal is still investigating the dispute and has not yet denied coverage. (Dkt. No. 16 at 3.) Under Rule 12(b)(6), Defendant argues that "the Complaint, when read with the insurance policy incorporated by reference therein, does not state facts showing that Federal has denied a valid claim or claims." (*Id.*) As an exhibit to its motion, Defendant includes a copy of the policy along with certain communications between Federal and Terlato. (Dkt. No. 16-1.)

## DISCUSSION

Because the Court disagrees with Defendant as to both ripeness and the Complaint's sufficiency under Rule 12(b)(6), Defendant's motion to dismiss is denied.

## I. Subject Matter Jurisdiction

Article III of the U.S. Constitution limits the jurisdiction of federal courts to live "cases" or "controversies." U.S. Const. art. III, § 2. Defendant argues this controversy is not yet "ripe" for judicial review under Article III because, contrary to the allegations in the Complaint, Defendant is still investigating Plaintiff's claims and has not denied coverage. (Dkt. No. 16 at 4.)

The Court disagrees. Ripeness is "peculiarly a question of timing," designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

3

disagreements." *Clark v. City of Seattle*, 899 F.3d 802, 808 (9th Cir. 2018).[2] Thus, a private contract claim is ripe if it presents "a substantial controversy between parties having adverse legal interests that savors sufficient immediacy and reality to warrant resolution." *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1088 (9th Cir. 2015).

A justiciable controversy exists here. "[W]hen a litigant resists his adversary's attempt to enforce a contract against him, the dispute has already completely materialized." *Id.* In the insurance context, delay or coverage defense can amount to such resistance because "in many cases, a lengthy delay in resolving a claim for insurance benefits will have the identical consequence for the insured as an outright denial of benefits." *McCormick v. Sentinel Life Ins. Co.*, 153 Cal. App. 3d 1030, 1050 (Ct. App. 1984); *see also Ingegno v. Pruco Life Ins. Co.*, No. 3:20-CV-00385-H-KSC, 2020 WL 2111901, at *3 (S.D. Cal. May 1, 2020) (finding the plaintiff's claim constitutionally ripe where the defendant had not approved or denied an insurance claim after seven months). Here, the fires occurred over two years ago, Defendant admits Plaintiff submitted a "Proof of Loss" claim over 11 months ago, Defendant has asserted "coverage defenses," and Defendant challenged Plaintiff's documentation as insufficient.[3] Such resistance to an "adversary's attempt to enforce a contract" means "the dispute has already completely materialized." *Golden*, 782 F.3d at 1088.

---

[2] Because the doctrine of ripeness derives from "both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," the "ripeness inquiry" involves typically involves "both a constitutional and a prudential component." *Safer Chemicals, Healthy Families v. U.S. Envtl. Prot. Agency*, 943 F.3d 397, 411 (9th Cir. 2019). However, where the decisive issue is one of ordinary contract law, prudential considerations do not apply. *Golden v. California Emergency Physicians Med. Grp.*, 782 F.3d 1083, 1086 (9th Cir. 2015).

[3] Defendant submits an affidavit from the Federal Insurance employee overseeing Plaintiff's claims and communications between Federal Insurance and Plaintiff regarding the "Proof of Loss." (Dkt. No. 16-1 at 1, 731, 734, 738.) According to those emails, Terlato failed to submit a "Proof of Loss" form until December 30, 2021 and reserved the right to revise its estimates. (*Id.* at 734.) Defendant claims it is continuing its investigation. (*Id.* at 1.) Plaintiff does not submit any contrary evidence.

When considering a factual challenge to subject matter jurisdiction, a Court may review evidence beyond the complaint without converting a motion to dismiss into a motion for summary judgment. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court has considered Defendant's evidence but finds that Defendant's resistance to processing Plaintiff's claim weighs in favor of jurisdiction, not against it.

1     Moreover, "the relatively expansive standards of a 12(b)(1) motion are not appropriate for

2 determining jurisdiction in a case like this, where issues of jurisdiction and substance are

3 intertwined." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  A court may not

4 resolve genuinely disputed facts where "the question of jurisdiction is dependent on the resolution

5 of factual issues going to the merits." *Id.* The parties here dispute a merits question—whether

6 Defendant has an obligation to perform under the policy or whether the delay has been

7 reasonable—not a pure jurisdictional matter.  Defendant argues that the delayed coverage

8 determination has been reasonable given the complexity of smoke-taint cases and Plaintiff's

9 failure to provide timely damage information.  (Dkt. No. 16 at 4-5.)  Plaintiff disagrees.  (Dkt. No.

10 26 at 7.)  "Whether a plaintiff possesses legally enforceable rights under a contract is a question on

11 the merits rather than a question of constitutional standing." *Lindsey v. Starwood Hotels & Resorts*

12 *Worldwide Inc.*, 409 F. App'x 77, 78 (9th Cir. 2010).   Thus, a court may address Defendant's

13 objection on the merits under Rule 12(b)(6), not under Rule 12(b)(1).  *Id.*

14     Defendant's contrary arguments are unpersuasive.  Defendant argues this Court lacks

15 subject matter jurisdiction because Plaintiff "has not fulfilled a condition of coverage by not

16 providing a complete and final proof of loss." (Dkt. No. 27 at 2.)  This argument fails to warrant

17 dismissal under Rule 12(b)(1).  As discussed above, whether Plaintiff possess legally enforceable

18 rights under a contract is a merits question rather than a question of standing.  *Lindsey*, 409 F.

19 App'x at 78.  Defendant proves this point via an inapposite analogy to *Bugarin v. All Nippon*

20 *Airways Co., Ltd.*, 513 F. Supp. 3d 1172 (N.D. Cal. 2021).  According to Defendant:

21 > The lack of a completed proof of loss is important because a suit
> should be dismissed when the plaintiff has failed to fulfill a condition
22 > of payment. In Bugarin, the plaintiff sought a refund for an airplane
> ticket for a flight that was canceled due to the COVID-19 pandemic.
23 > The terms of the ticket required that the plaintiff customer request a
> refund from the defendant airline. The plaintiff called the airline to
24 > request a refund, but never got through to a customer service
> representative. Her suit was dismissed because it was still
25 > hypothetical that the airline would refuse her request for a refund.
> *Bugarin* at 1182.
26
27 > Similarly, Plaintiff here has failed to comply with the conditions for
> payment included in the Federal policy, by failing to submit a
> completed proof of loss in compliance with the insurance policy.
28

5

1  (Dkt. No. 27 at 2.) But contrary to Defendant's representation, the court in *Bugarin* denied the

2  defendant's motion to dismiss under Rule 12(b)(1) as to both standing and ripeness. *See* 513 F.

3  Supp. 3d at 1184. The court found that the "arguments that [the contract] requires Bugarin to

4  request a refund, and that [defendant] did not prevent Bugarin from requesting a refund, go to the

5  merits of the contract claim and not its constitutional ripeness." *Id.* While the court did dismiss

6  the plaintiff's claims, it did so on Rule 12(b)(6) grounds, not under Rule 12(b)(1). *Id.* at 1193.

7  Because the dispute here is sufficiently concrete and the jurisdictional disputes are

8  intertwined with merits questions, the Court has subject matter jurisdiction. Thus, Defendant's

9  motion under Rule 12(b)(1) is denied.

## II.     Failure to State a Claim

Defendant's motion under Rule 12(b)(6) for failure to state a claim is also denied. To plead breach of contract, Plaintiff must allege "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." *First Com. Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). Plaintiff alleges the existence of the insurance policy. (Dkt. No. 1 ¶ 1.) Plaintiff alleges Terlato performed its obligations, including premium payment and filing a "notice of its claim arising from the LNU and Glass Fires." (*Id.* ¶¶ 28, 34.) Plaintiff alleges Federal "denied coverage" with respect to certain claims. (*Id.* ¶¶ 32, 35, 37.) And Plaintiff alleges monetary damages as a result. (*Id.* ¶ 41.) At this stage, Plaintiff's factual allegations—taken as true—raise an inference that Defendant is liable for the misconduct alleged. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Defendant argues Plaintiff's claims fail as a matter of law because (1) the contract requires Plaintiff to submit detailed claim information and Plaintiff failed to do so,[4] (2) Defendant is entitled to investigate the claims, and (3) Plaintiff's failure to claim an exact amount of damages shows both parties are still investigating the loss. The Court disagrees.

Defendant's argument regarding the sufficiency of Plaintiff's performance fails. The

---

[4] A court may consider documents incorporated into the complaint by reference and items that are proper subjects of judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Because the contract is explicitly referenced in the Complaint, the Court considers its terms here. (Dkt. No. 1 ¶ 1.)

6

policy does require Plaintiff to submit a "sworn proof of loss" and provide information at Federal's request. (*See* Dkt. No. 16-1 at 155.) Plaintiff pleads that Terlato filed "notice of its claim." (Dkt. No. 1 ¶ 35.) Drawing all inferences in favor of the non-moving party, *Lazy Y Ranch*, 546 F.3d at 588, Plaintiff's allegation raises an inference that Terlato met its obligation under the policy to submit proof of loss. To the extent Defendant challenges the adequacy of Plaintiff's "proof of loss" on the basis that Terlato submitted "preliminary" information rather than a "complete and final proof of loss," Defendant's challenge fails. (Dkt. No. 27 at 2.) Defendant's evidence—certain emails between the parties—is beyond the scope of the Complaint and the policy. Thus, that documentation is not under consideration at this stage under Rule 12(b)(6). Moreover, were the Court to consider such evidence, Defendant's argument would still fail at this stage because the parties agree Plaintiff submitted a proof of loss in December 2021. (Dkt. No. 16 at 5; Dkt. No. 26 at 8.) The contract does not include the words "complete and final." (Dkt. No. 27 at 2.) Thus, drawing all reasonable inferences in Plaintiff's favor, Defendant's objection to Plaintiff's proof of loss fails at this stage.

Defendant next argues that "an insurer is entitled to a reasonable amount of time to investigate claims, especially when claims have factual complexities" and "there is no claim for breach of contract while an insurer is still investigating the claim." (Dkt. No. 16 at 6; Dkt. No. 27 at 3.) But Defendant's authority for this statement is inapposite. *See Ingegno v. Pruco Life In. Co.*, No. 3:20-CV-00385-H-KSC, 2020 WL 2111901, at *4 (S.D. Cal. May 1, 2020). In *Ingegno*, the insurance policy explicitly authorized a two year "contestability" period and did not specify an investigation timeline "within the contestability period." *Id.* Here, Defendant fails to point to a similar "contestability" clause or investigation timeline in the contract. As discussed above, there is no blanket rule that allows insurers an indefinite period to investigate claims. *See McCormick*, 153 Cal. App. 3d at 1050 ("An insurance company cannot insulate itself from liability simply because rather than denying benefits outright it keeps a claims file on the shelf for months or years without ever formally denying it.") Absent any term in the contract authorizing an investigation period, Plaintiff's constructive denial claim does not fail as a matter of law.

Finally, Defendant cites no support for the theory that Terlato must specify a damage

7

calculation to state a claim under an insurance contract.  (Dkt. No. 16 at 7.)  Because Defendant fails to cite any authority to support this argument, the Court rejects Defendant's theory.

Taken as true, Plaintiff's factual allegations state a plausible breach of contract claim. *Lazy Y Ranch*, 546 F.3d at 588.  Thus, Defendant's motion under Rule 12(b)(6) is denied.

## CONCLUSION

Defendant's motion to dismiss under Rules 12(b)(1) and 12(b)(6) is DENIED.  An initial Case Management Conference is set for January 12, 2023 at 1:30 p.m. via Zoom video.  A joint Case Management Statement is due one week in advance.

This Order disposes of Docket Numbers 16, 28.

**IT IS SO ORDERED.**

Dated: November 28, 2022

_____
JACQUELINE SCOTT CORLEY
United States District Judge